Joseph H. Low IV (SBN 194897)
THE LAW FIRM OF JOSEPH H. LOW IV
One World Trade Center, Suite 2320
Long Beach, CA. 90831
Telephone: (562) 901-0840
Facsimile: (562) 901-0841
E-Mail: JHLowIV@aol.com

Michael R. Marrinan, Esq. (SBN 90484)
LAW OFFICES OF MICHAEL R. MARRINAN
614 Fifth Ave., Suite D
San Diego, CA. 92101
Telephone: (619) 238-6900
Facsimile: (619) 515-0505
E-Mail: mrmarrinan@aol.com

Attorneys for Plaintiffs
GUADALUPE MENDOZA and JAVIER MENDOZA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE MENDOZA and JAVIER MENDOZA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE,<br>DEPUTY D. MISSEL,<br>DEPUTY A. SEVILLA,<br>DEPUTY JON AUER,<br>DEPUTY RICARDO JURADO,<br>and SGT. MIKE TOLEDO,<br><br>Defendants.<br>_____ | CASE NO. SACV 03-1186 DOC (Anx)<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br><br><br>Trial.: April 8, 2008<br>Time: 8:30 a.m.<br>Ctrm: 10C<br><br><br>FOR DETERMINATION BY THE<br>HONORABLE JAMES V. SELNA |

# **TABLE OF CONTENTS**

|   | Page |
|---|---|
| INTRODUCTION | 5 |
| STATEMENT OF FACTS | 5 |
| I. LIABILITY FOR UNREASONABLE FORCE | 10 |
| II. LIABILITY FOR THE FALSE ARREST OF JAVIER MENDOZA | 11 |
|    A. Probable Cause | 11 |
|    B. A Person May Not be Arrested for Invoking Fourth Amendment Rights | 12 |
| III. LIABILITY FOR FAILURE TO INTERVENE | 13 |
| IV. LIABILITY FOR UNREASONABLE SEARCH AND SEIZURE | 14 |
| V. THE FOURTH AMENDMENT'S REASONABLENESS STANDARD APPLIES TO GUADALUPE MENDOZA'S CLAIM FOR EXCESSIVE FORCE | 15 |
| VI. DAMAGES | 17 |

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

Anderson v. Branen
17 F.3d 552 (2d Cir.1994) .................................................................. 13

Barlow v. Ground
943 F.2d 1132 (9th Cir. 1991) ............................................................. 10

Barton v. Norrod
106 F.3d 1289 (6th Cir.1997) .............................................................. 13

Boyd v. Benton County
374 F.3d 773 (9th Cir.2004) ................................................................ 15

Brower v. County of Inyo
489 U.S. 593 (1989) ............................................................................ 16

Byrd v. Clark
783 F.2d 1002 (11th Cir. 1986) ........................................................... 13

Caballero v. City of Concord
956 F.2d 204 (9th Cir. 1992) ............................................................... 11

City of Houston v. Hill
482 U.S. 451 (1987) ............................................................................ 12

Dunaway v. New York
442 U.S. 200 (1979) ............................................................................ 11

Graham v. Connor
490 U.S. 386 (1989) ................................................................ 10, 11, 16

Hale v. Townley
45 F.3d 914 (5th Cir.1995) .................................................................. 13

Jensen v. City of Oxnard
145 F.3d 1078 (9th Cir.1998) .............................................................. 16

Kennedy v. Los Angeles Police Dept.
901 F.2d 702 (9th Cir. 1988) ............................................................... 11

Lanigan v. Village of East Hazel Crest, Ill.
110 F.3d 467 (7th Cir. 1997) ............................................................... 14

Mackinney v. Nielsen
69 F.3d 1002 (9th Cir.1995) ................................................................ 12

McKenzie v. Lamb
738 F.2d 1005 (9th Cir. 1984) ............................................................. 11

| | **Page** |
|---|---|
| Palmer v. Sanderson<br>9 F.3d 1433 (9th Cir. 1993) | 10 |
| People v. Curtis<br>70 Cal.2d 347 (1969) | 13 |
| Santos v. Gates<br>287 F.3d 846 (9th Cir. 2002) | 10 |
| Smith v. Wade<br>461 U.S. 30 (1983) | 17 |
| United States v. Koon<br>34 F.3d 1146 (9th Cir. 1994) | 13 |
| United States v. Prescott<br>581 F.2d 1343 (9th Cir. 1978) | 12 |
| Yang v. Harden<br>37 F.3d 467 (7th Cir. 1997) | 13 |

**Statutes**

| | |
|---|---|
| 42 U.S.C. § 1983 | 5, 11, 13, 17 |
| California Penal Code § 148 | 13 |

# INTRODUCTION

This is a civil rights case brought pursuant to 42 U.S.C. § 1983, et seq. Plaintiffs allege they were subjected to excessive force and an unlawful search and seizure by the defendant Orange County sheriff's deputies in violation of their Fourth Amendment rights. Plaintiff Javier Mendoza also alleges he was falsely arrested, in violation of his Fourth Amendment rights.

# STATEMENT OF FACTS

At the time of this incident Plaintiff Guadalupe Mendoza was 40 years old. She and her husband, Jose Javier Mendoza, have five children, ages 6 to 19 at the time of this incident. Mr. And Mrs. Mendoza have been married for 23 years. At the time of this incident the Mendoza family was living in an attractive, middle class neighborhood in San Juan Capistrano. Guadalupe Mendoza has worked in the housekeeping department of the Ritz Carlton Hotel for over 20 years. Her husband has worked for the city of Mission Viejo for over 20 years.

Plaintiff Javier Mendoza, the Mendoza's oldest son, was 19 years old at the time of this incident. Other than this incident, he has never been arrested or been in any type of trouble with the law. He has no tattoos, no gang affiliation and has been working since he was in high school. He currently works full time for the Capistrano Unified School District.

On July 29, 2005 the Mendoza family was asleep in their home. Javier and his brother Sergio, who shared a bedroom, woke up around 1:30 a.m. They watched television and shared a marijuana cigarette, after which Javier began feeling anxious and fearful. Sergio was concerned because Javier seemed to be ill.

Sergio woke up his parents and told them that Javier seemed to be ill. Mr. and Mrs. Mendoza spoke to Javier and became concerned. He appeared to be ill and was talking a lot. He said that his heart was beating too fast.

Mr. and Mrs. Mendoza took Javier downstairs. Mrs. Mendoza and Javier sat together at the dining table. At Javier's request, Mrs. Mendoza began reading

the bible to him. Mrs. Mendoza felt that Javier should go see a doctor because he seemed to be ill. Javier did not want to go. After several minutes of reading the bible Mrs. Mendoza walked across the street to the home of her brother and sister in law, Leonel and Modesta Mendoza. Leonel and Modesta returned to the Mendoza home with Mrs. Mendoza.

When Mrs. Mendoza returned Javier was still sitting at the dining table reading the bible. Mrs. Mendoza sat down next to her son and continued reading the bible. Several minutes later Mrs. Mendoza asked her son Miguel (age 14) to call 911 for help in getting Javier to a hospital. Javier did not know that Miguel was calling 911.

Miguel called 911 and the sheriff's dispatcher answered. Miguel explained that they needed help because his brother was acting strange, may be on drugs and had socked him and his father.

Defendants Missel, Auer and Sevilla responded to the Mendoza home. When they arrived, Javier was sitting at the dining table reading the bible. There was no yelling or arguing taking place when the deputies arrived.

The deputies knocked on the door. Sergio Mendoza answered the door and the deputies entered the Mendoza home. The dining table was immediately to the right of the front door, only a few feet away. Mrs. Mendoza walked the few feet from the dining table to meet the deputies inside her front door. The deputies could immediately see Javier sitting at the dining table wearing only boxer shorts (no shirt), reading a large bible.

The deputies had a brief conversation with Mrs. Mendoza. Mrs. Mendoza explained that she needed help in getting her son, Javier, to a doctor. Deputy Missel responded, "That's why you called?" Javier repeatedly told the deputies to leave his home and to leave him alone. He said, "This is my house. Leave me alone." He did not say or do anything that was threatening or violent.

At the time Javier Mendoza weighed approximately 150 pounds. He is 5' 9"

tall. The three deputies were only a few feet away from him. Deputy Missel is 6 feet tall and weighs 220 pounds. Deputy Auer is 6' 2" and weighs 225 pounds. Deputies Missel and Auer were in uniform with their full complement of weapons (pepper spray, baton, flashlight, etc.) Deputy Sevilla was in plain clothes.

Deputy Missel said he wanted Javier to come outside. Javier declined, and told the deputies to leave. Deputy Missel did not intend to arrest Javier at that time and did not have probable cause to do so. He and Deputy Sevilla decided that Deputy Sevilla should obtain the pepperball shotgun from his police car.

Deputy Sevilla left and returned with the pepperball gun. Javier was standing next to the chair he had been sitting in. Javier declined to come outside and again told the deputies to leave. Deputy Auer began spraying pepper spray into Javier's face and eyes. Within seconds Deputy Sevilla began shooting Javier with the pepperball gun.

Javier had done nothing aggressive before being pepper sprayed and shot. The spray hit him in the eyes, causing severe pain. Javier immediately covered his eyes. Deputy Sevilla kept firing and the pepperballs continued to hit Javier's body and explode, shooting out pepper spray as they hit, causing more pain. Deputy Sevilla fired over 40 times. Javier tried to block some of the shots with the bible, but a deputy knocked it out of his hands. Javier was hit over 20 times with the pepper balls, each shot leaving a red welt on his body. (See photos.)

When he could take no more shots, Javier ran upstairs. He did so out of fear of further injury or death. As he did so, Deputy Missel followed, hitting Javier with an expandable baton.

The shooting of Javier Mendoza by Deputy Sevilla was witnessed by Guadalupe Mendoza and her other family members. Mrs. Mendoza was terrified. She initially thought that the gun was real, as did Javier and the other family members. Mrs. Mendoza could not believe that her request for help in getting her son to a doctor had resulted in deputies pepper spraying her son and shooting at

7 PLAINTIFFS' TRIAL BRIEF

him 40 times, particularly when her son was simply sitting/standing at their dining table in boxer shorts a few feet away from three large sheriff's deputies, doing nothing threatening or violent.

All three deputies followed Javier up the stairs. Mrs. Mendoza was at the top of the stairs, ahead of Javier and the deputies. Javier stopped, hugged his mother and said, "They're going to kill me." He then entered his bedroom.

Deputy Missel, still wielding his baton, was trying to force open the bedroom door. Mrs. Mendoza told Deputy Missel to leave her son alone. Deputy Missel told her to "Get out of here." He then hit Mrs. Mendoza over the head with his club.

This blow caused a large gash in Mrs. Mendoza's head and blood poured out. Twelve staples were required to close the gash in Mrs. Mendoza's head. After being hit, Mrs. Mendoza went downstairs and called 911 for help. She said she needed help to take her son to a doctor, but these men were trying to kill him. She wondered whether they were real sheriff's deputies.

After Mrs. Mendoza was hit over the head, the deputies opened the unlocked door to Javier's bedroom. They did not search the room. Had they done so, they would have found Javier cowering in the closet. The deputies thought Javier had gone out the window. At this point the deputies left the Mendoza home and went outside. The Mendoza family members were outside as well. Mrs. Mendoza's head was bleeding profusely.

Javier Mendoza stayed in the closet for a few minutes, then walked down the hallway to his parents' bedroom. He entered and closed the door.

Eventually, defendants Sgt. Toledo and Deputy Jurado arrived, along with several other deputies. Sgt. Toledo and Deputy Jurado huddled with Deputies Missel, Auer and Sevilla outside the Mendoza home. After several minutes they heard or saw Javier through the window in his parents' upstairs bedroom.

The deputies called to Javier to come downstairs. Javier was afraid that if

he did so the deputies would hurt him again so he remained in the bedroom.  At the time Javier was in severe pain from the pepper spray and the numerous shots with the pepperball gun.

Sgt. Toledo, Deputy Missel and the other defendants decided to re-enter the Mendoza home to arrest Javier, ostensibly for Penal Code § 148.  Before doing so Deputy Missel obtained a "less - lethal" (bean bag) shotgun.

The deputies went upstairs and approached the bedroom door.  They said nothing.  Suddenly, without warning, the bedroom door was kicked in by Deputy Auer.  As the door was kicked in, Deputy Missel pointed the less-lethal shotgun at Javier.  Within seconds, he began firing.  Javier was standing 4-5 feet inside the bedroom in his boxer shorts, doing nothing.  His hands were visible and empty. .

One deputy said, get down.   Javier remained standing, scared for his life.  Rather than simply grabbing and handcuffing Javier, Deputy Missel fired the less-lethal shotgun at Javier  3-4 times, within seconds of the door being kicked in.  No deputy made any effort to intervene, despite a break between the shots.

Javier was hit three times from very close range.  He was hit in his arm, ribs and stomach, causing severe pain and further injury.  Javier fell onto the bed, helpless and not moving.

The other deputies jumped on Javier's back, causing additional pain and injury.  They grabbed his arms and clamped handcuffs on him, very tight.  Javier was picked him up and taken out of the house and into a police car.

As they did so, the deputies walked Javier by his family members, including his mother.  Guadalupe had blood all over her head, face and hands.  She asked the deputies "Please take him to the doctor and don't strike him anymore."

Javier was driven to the police station.  He was in pain all over his body–hands, ribs, stomach, back, etc. At the police station Javier eventually received first aid from paramedics, who flushed his face and eyes with water.  Javier was soon transported to a hospital for treatment of his injuries.  A urine

sample was obtained and tested for the presence of illegal drugs and alcohol. It was negative for alcohol and all controlled substances prohibited by Health & Safety Code § 11550. It was positive for a small amount of marijuana. After being treated, Javier was transferred to the county jail. Three days later he was released on his own recognizance.

# I

# LIABILITY FOR UNREASONABLE FORCE

The excessive use of force by a law enforcement officer during detention or arrest procedures constitutes a violation of the Fourth Amendment, and is actionable under 42 U.S.C. section 1983. <u>Graham v. Connor</u>, 490 U.S. 386 (1989); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135-36 (9th Cir. 1991).

> "A section 1983 claim based on a violation of the Fourth Amendment is on solid ground in this circuit. This court has held that a section 1983 claim may be based upon the Fourth Amendment where the police use excessive force during arrest procedures." <u>Robins v. Harum</u>, 773 F.2d 706, 713 (9th Cir.1985).

"Force is excessive when it is greater than is reasonable under the circumstances." <u>Santos v. Gates</u>, 287 F.3d 846, 854 (9th Cir.2002), citing <u>Graham</u>, <u>supra</u>, 490 U.S. at 395. Even excessively tight handcuffs can, depending on the circumstances, constitute a violation of the Fourth Amendment. <u>Santos</u>, <u>supra</u>, 287 F.3d at 854, citing <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1436 9th Cir.1993).

As in other Fourth Amendment contexts, "the 'reasonableness' inquiry in an excessive force case in an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." Graham, supra, 490 U.S. at 397.

Thus, as to Plaintiffs' claims for excessive force, the issue for the jury to determine is whether the force used by the officers was reasonably necessary or "objectively reasonable" under the circumstances.

If the jury finds the force used to be unreasonable under the circumstances, Plaintiffs' Fourth Amendment rights against unreasonable seizures have been violated and they may recover damages for all physical and emotional injuries sustained. 42 U.S.C. section 1983; Graham, supra.

## II

## LIABILITY FOR THE FALSE ARREST OF JAVIER MENDOZA

### A. Probable Cause

An arrest without probable cause is an unlawful seizure and violates the Fourth Amendment. Dunaway v. New York, 442 U.S. 200, 208 (1979); Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992); McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Such a violation gives rise to an action for damages under § 1983.

Probable cause to arrest exists "where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." McKenzie, supra, 738 F.2d at 1008, quoting from Dunaway, supra, 442 U.S. at 208, n. 9; Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 705 (9th Cir.1988).

Even if there is probable cause to arrest for one crime, the lack of probable cause for arrest on a second charge is actionable where additional damages, such as increased bail, etc., flow from the second charge. See, eg., McKenzie v. Lamb, supra, 738 F.2d at 1011.

Javier Mendoza was sitting at the kitchen table reading the bible when the

deputies arrived. Javier did nothing threatening or violent, nor did he exhibit symptoms which would justify an arrest. When Javier ran upstairs he did so in lawful self defense, after being unlawfully sprayed with pepper spray and shot at with the pepperball gun some 40 times, with over 20 of the shots hitting his unprotected body, causing severe pain and injury.

### B. A Person May Not be Arrested for Invoking Fourth Amendment Rights

Where an officer has no warrant, a citizen cannot be arrested for refusing entry into his home, refusing to consent to the officer's requests or verbally protesting the officer's actions. Asserting Fourth Amendment rights cannot be a crime, nor can it be evidence of a crime. U.S. v. Prescott, 581 F.2d 1343, 1350-51 (9th Cir.1978); Mackinney v. Nielsen, 69 F.3d 1002, 1006-07 (9th Cir. 1995).

> "It is well established under California law that even 'an outright refusal to cooperate with police officers cannot create adequate grounds for [police] intrusion' without more. *People v. Bower, 24 Cal.3d 638, 649. . ."* Id.

In this case Javier Mendoza was well within his First and Fourth Amendment rights when he ordered the deputies to leave his home. Even if the deputies had a right to be there, Javier could not be arrested for his statements. Prescott, supra; City of Houston v. Hill,482 U.S. 451, 461-63 (1987) [The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.]

As Deputy Auer is pepper spraying Javier, Defendant Sevilla shoots Javier with the pepperball gun some 40 times (over 20 shots hit him). This was excessive force. Eventually, Javier runs upstairs to escape the abuse. Javier was forced to flee the room to a place of safety upstairs. He, like any person, had a right to self defense.

Where a peace officer is using excessive force he is not acting in the lawful performance of his duties and an arrest for Penal Code § 148 would be unlawful. See P.C. § 148; CALJIC 16.110; People v. Curtis, 70 Cal.2d 347, 357 ((1969) [officers not in lawful performance of their duties where they use excessive force; resistance to unlawful arrest or to excessive force is *not* a violation of § 148.]

## III

## LIABILITY FOR FAILURE TO INTERVENE

Those deputies who did not directly inflict the injuries caused by a co-defendant's act of excessive force or false arrest may be liable under § 1983 based upon their failure to intervene and prevent or stop the excessive force or false arrest that they witnessed.

A person "subjects" another to a deprivation of a constitutional right within the meaning of 42 U.S.C. § 1983 if that person does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do which causes the Plaintiff to suffer a deprivation of a constitutional right. Johnson v. Duffy, 588 F.2d 740,743. (9th Cir. 1978).

A law enforcement officer has a duty to intercede on behalf of a citizen whose constitutional rights are violated in his presence by other officers, and failure or refusal to intervene will cause that officer to become directly liable under § 1983. See, e.g., Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Hale v. Townley, 45 F.3d 914, 919 (5th Cir.1995); Barton v. Norrod, 106 F.3d 1289, 1299 (6th Cir.1997). See also, U.S. v. Koon, 34 F.3d 1146, 1447 (9th Cir.1994)

A police officer who has the opportunity to do so but who fails to intervene when a constitutional violation such as an act of excessive force takes place in his presence will be directly liable under 42 U.S.C. § 1983. Byrd v. Clark, supra, 783 F.2d at p. 1007. Normally, whether there was an opportunity for officers to intervene in the use of excessive force is a question of fact for the jury. See, e.g., Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.1994); Yang v. Hardin, 37 F.3d

282, 285 (7th Cir.1994); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 ((7th Cir.1997).

Thus, on this issue the jury must determine whether Deputies Auer and Missel had the opportunity to intervene at some point during the shooting of the pepperball gun. The jury also must determine whether Deputies Sevilla, Auer, Jurado, and Toledo, each of whom was present and within a few feet of Deputy Missel when he fired the bean bag shotgun 3-4 times (with breaks in between shots), could have intervened and stopped him from continuing to fire at Javier Mendoza.

## IV

## LIABILITY FOR UNREASONABLE SEARCH AND SEIZURE

Searches and seizures inside a home without a warrant are presumptively unreasonable under the Fourth Amendment. See, e.g., Payton v. New York, 445 U.S. 573, 586 (1980). Searches conducted pursuant to consent or exigent circumstances may fall within exceptions to the general rule that a warrant is necessary. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

Here, there are two separate entries into the Mendoza home that defendants must justify based upon consent or exigent circumstances, as well as a forced entry into the bedroom where Javier Mendoza was arrested. Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry. . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." U.S. v. Brooks, 367 F.3d 1128, 1135 (9th Cir.2004).

The jury will have to decide whether the entries into the Mendoza home and the searches therein were reasonable under the Fourth Amendment and whether one of the exceptions to the warrant requirement applies to each entry/search.

Regardless of whether the deputies had a right to enter and search the

Mendoza home, they may be liable for acts inside the Mendoza home which the jury finds to have been unreasonable. Indeed, even a valid search warrant does not nullify a Fourth Amendment claim that a search was conducted in an unreasonable manner. Hill v. McIntyre, 884 F.2d 271, 277 (6th Cir.1989), quoting Franks v. Delaware, 438 U.S. 154.

If a search is executed in an unreasonable manner, police officers conducting the search are liable under § 1983 for a Fourth Amendment violation. Galluccio v. Holmes, 724 F.2d 301, 304 (2d Cir.1983). Officers' conduct in executing a search warrant is always subject to judicial review as to its reasonableness. Officers may face § 1983 liability for executing a search in an unreasonable manner. Bergquist v. Cochise County, 806 F.2d 1364, 1369 (9th Cir.1986).

Thus, officers may not use unreasonable force or otherwise act unreasonably when executing an otherwise lawful search inside a home. Franklin v. Foxworth, 31 F.3d 873, 875-876 (9th Cir.1994); see also, Santos v. Gates, supra.

Thus, the jury will also have to determine whether the deputies acted unreasonably when they were inside the Mendoza home, on both occasions.

V

**THE FOURTH AMENDMENT'S REASONABLENESS STANDARD APPLIES TO GUADALUPE MENDOZA'S CLAIM FOR EXCESSIVE FORCE**

In Boyd v. Benton County, 374 F.3d 773 (9th Cir. 2004), the Court rejected the argument that one must be "seized" in order to have a Fourth Amendment claim. The Court held that the use of excessive force during a *search* violates the Fourth Amendment, whether or not the person was "seized". Id., at 779-80.

> "Moreover, the County defendants' argument that the *Fourth Amendment* does not prohibit the use of excessive force during a search, in the absence of a seizure, has no merit.

> This Circuit has clearly recognized that the use of excessive force during a search makes that search unreasonable under the *Fourth Amendment. See Chuman v. Wright, 76 F.3d 292, 293 (9th Cir. 1996)...*" <u>Id</u>., at 779-80.

Here, it is undisputed that the deputies were engaged in a search when Mrs. Mendoza was hit. Thus, Deputy Missel's use of excessive force on Mrs. Mendoza during that search would violate her Fourth Amendment rights and the Fourth Amendment's "reasonableness" standard would apply. <u>Id</u>.

Moreover, Mrs. Mendoza was "seized" when Deputy Missel ordered her to go upstairs. A Fourth Amendment seizure occurs when an officer "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." <u>Graham v. Conner</u>, 490 U.S. 386, 394 (1989). This is precisely what happened when Mrs. Mendoza was ordered to go upstairs, thus implicating her Fourth Amendment rights.

Mrs. Mendoza was also "seized" when she was hit over the head by Deputy Missel. In <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078, 1083 (9th Cir. 1998), the Court found a seizure occurred when a police officer mistakenly shot and killed a fellow officer during the search of a home, citing <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-97 (1989) (a seizure is a "governmental termination of freedom of movement through means intentionally applied" and a "seizure occurs even when an unintended person or thing is the object of the detention or taking.")

Whatever "movement" Mrs. Mendoza was engaged in, it was "terminated" when she was hit. And, even if Javier was the object of the detention and Mrs. Mendoza was unintentionally hit, a seizure could be found to have occurred at that point. <u>Jensen</u>, <u>supra</u>, 145 F.3d at 1083 and 1084.

# VI
# DAMAGES

Plaintiffs are entitled to general and compensatory damages for all injuries and damages proximately caused by the acts of the defendants. 42 U.S.C. § 1983, et seq.; Model Ninth Circuit Jury Instructions, Civil, Instr. 5.1 and 5.2.

In addition to compensatory damages, punitive damages may be awarded against the defendant officers. Under federal law, punitive damages may be awarded not only where malice is shown, but also where the defendants' acts involve a "reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); Gordon v. Norman, 788 F.2d 1194, 1199 (6th Cir. 1986).

Dated: April 4, 2008

/s/ **Michael R. Marrinan**
Attorney for Plaintiffs
Email: mrmarrinan@aol.com